IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | |
| BULLOCKS EXPRESS ) | |
| TRANSPORTATION, INC. ) | Case No. 13-17784 EEB |
| EIN: 84-1132684 ) | Chapter 11 |
| ) | |
| Debtor. ) | |

_____

**MOTION SEEKING EXPEDITED ENTRY OF
ORDER UNDER 11 U.S.C. §§ 105(a), 361, 363, AND 364 AND
BANKRUPTCY RULES 2002, 4001, 6003, AND 9014: (A) AUTHORIZING DEBTOR TO
FACTOR, AND INCUR POST PETITION SECURED INDEBTEDNESS; (B)
GRANTING SECURITY INTERESTS AND SUPER-PRIORITY CLAIMS; AND
(C) SCHEDULING FINAL HEARING**
_____

BULLOCKS EXPRESS TRANSPORTATION, INC., Debtor in Possession herein ("Debtor"), by and through its counsel Sender Wasserman Wadsworth, P.C, for its Motion Seeing Expedited Entry of Order under 11 U.S.C. §§ 105(a), 362, 363, and 364 and Bankruptcy Rule 2002, 4001, 6003, and 9014 (A) Authorizing Debtor to Factor, and Incur Post Petition Secured Indebtedness, (B) Granting Security Interest and Super-Priority Claims, and (C) scheduling Final Hearing, hereby states as follows:

1. The Debtor filed for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on May 8, 2013(the "Petition Date"), and is operating as a Debtor-in-Possession.

2. The Debtor was formed in April of 1990 to offer trucking and transportation services between the markets of Dallas, Texas, Denver, Colorado, and Albuquerque, New Mexico. From 2001 to 2007 the Debtor primarily participated in "less than truckload ("LTL") shipping. In 2007, the Debtor sold its LTL business to Old Dominion Freight Line, Inc. From 2007 to present, the Debtor primarily operates long range routes from Denver, Colorado to Los Angeles, California, Denver, Colorado to Salt Lake City, Utah, and Denver, Colorado to Dallas Texas. Debtor operates its business at 510 East 51st Avenue in Denver, Colorado, 80216 ("Headquarters"). The Debtor is a privately held company and Bruce Bullock is the President and sole shareholder.

3. Consistent with the requirements of L.B.R. 1007-7 and L.B.F 1007-7.1, the Debtor states that there is no receiver in possession of the debtor's property.

4. The Debtor does not own any real property. The Debtor leases its Headquarters. It neither owns nor leases any real property other than the Headquarters. The Debtor's primary assets are 16 trucks, of which 8 are owned by PACCAR Financial Corp. and leased to the Debtor. PACCAR Financial Corp. is also the lender on 7 of the Debtor's trucks. GE Capital is the lender on the remaining truck. The Debtor also owns 30 trailers on which GE Capital asserts security interest. The Debtor also leases another 28 trailers from XTRA Leasing.

5. Debtor and RTS Financial Resources, LP ("RTS") entered into a Factoring Agreement on or about August 3, 2007 ("Original Factoring Agreement"). A true and accurate copy of the Original Factoring Agreement is attached hereto as Exhibit 1. Under the terms of the Original Factoring Agreement the Debtor sold to RTS Debtor's existing and future Accounts Receivable ("Accounts") arising from services performed in the regular course of Debtor's business. RTS, in it sole discretion, under the terms of the Factoring Agreement could purchase such Accounts from Debtor as RTS deemed acceptable. The Debtor in return agreed to sell, assign, transfer, convey and deliver to RTS, such Accounts as RTS shall elect to purchase. All remittances received by the Debtor for payment of Accounts sold to RTS are property of RTS and Debtor shall hold such proceeds in trust for RTS and shall immediately deliver to RTS all payments receive by Assignor on each Account, together with all documents accompanying the remittance to Assignor.

6. The Original Factoring Agreement was amended on October 14, 2011and July 26, 2012. True and accurate copies of the amendments are attached hereto as Exhibits 2 and 3.

7. Debtor started to have a decline in revenue starting in December of 2012. The Debtor started to have a series of trucks breaking down which resulted in an unexpected increase in operational expenses. The Debtor also had a significant drop in revenue in February, 2013, and had other financial setback in the month leading to the bankruptcy including successive snowstorms that reduced revenues for the Debtor.

8. The Debtor has reached an agreement with RTS providing for postpetition financing by and through a Factoring Agreement ("Factoring Agreement"). A true and accurate copy of the Factoring Agreement is attached hereto as Exhibit 4.

9. RTS asserts that, based on its Original Factoring Agreement, it owns all Accounts of the Debtor. In accordance with the terms of the Factoring Agreement as made and entered on that same date and the proposed Interim Order filed contemporaneously with the separate Motion of Debtor to Factor and Incur Post Petition Secured Indebtedness, the Debtor requests that this Court, pursuant to 11 U.S.C. §§ 105(a), 361, 363, and 364 and Fed. R. Bankr. P. 2002, 4001, 6003 and 9014, (a) authorize the Debtor to Factor, and Incur Post Petition Secured Indebtedness; and (b) grant RTS the requested security interest and super-priority claims requested thereby.

10. In the event some or all of the funds at issue are cash collateral, however, the Debtor acknowledges that authorizing the use of the Cash Collateral is also appropriate, if necessary and appropriate, under the provisions of 11 U.S.C. § 363(c)(2) and the rationale articulated in *Chaussee v. Morning Star Ranch Resorts Company*, 64 B.R. 818 (Bankr. D. Colo. 1986).

11. Debtor requires authorization of the Factoring Agreement and incurring of post petition secured indebtedness to operate its business and prevent diminution in value of the assets of the estate while the Financing Motion is pending. Debtor will use the Factoring Agreement in order to fund its post-petition operations

12. Absent authorization of the Factoring Agreement on an interim basis, Debtor will be unable to continue its operations and to proceed with the reorganization of its debts in an orderly fashion, which could result in a significantly reduced recovery for the Debtor's estate. Alternatively, if the Factoring Agreement is authorized, the Debtor will be able to maximize the value of its estate through the continuation of the Debtor's business.

13. Debtor intends to utilize the financing obtained via the Factoring Agreement in substantial accordance with a budget to be submitted on or before the hearing scheduled in this matter.

14. The equities of the case mitigate in favor of Debtor being granted leave to factor and to incur post petition secured indebtedness so it can reorganize. RTS's interest in such protection is supported by strong public policies favoring continuation of jobs, preservation of going concern values, and rehabilitation of distressed debtors. *See* H.R. Rep. 834, 103rd Cong., 2nd Sess. 27 to 29 (Oct. 4, 1994); 140 Cong. Rec. H10768 (Oct. 4, 1994).

15. Approval of the Factoring Agreement is in the best interest of the Debtor, the creditors, and the estate as it will allow the Debtor to maintain its ongoing business operations, generate revenue, and provide the Debtor with an opportunity to propose a meaningful plan. The Debtor further believes that the use of the Factoring Agreement is the best source of financing to continue operations.

**WHEREFORE,** the Debtor requests that this Court enter an Order in the form attached hereto Granting the Motion Seeing Expedited Entry of Order under 11 U.S.C. §§ 105(a), 362, 363, and 364 and Bankruptcy Rule 2002, 4001, 6003, and 9014 (A) Authorizing Debtor to Factor, and Incur Post Petition Secured Indebtedness, (B) Granting Security Interest and Super-Priority Claims, and (C) scheduling Final Hearing on the terms and conditions set forth herein and for such other and further relief as the Court deems just.

DATED this 8th day of May, 2013.    SENDER WASSERMAN WADSWORTH, P.C.

*/s/ Robert D. Lantz*
Harvey Sender, #7546
Robert D. Lantz, #30825
1660 Lincoln Street, Suite 2200
Denver, Colorado 80264
(303) 296-1999; (303) 296-7600 (fax)
hsender@sww-legal.com
rlantz@sww-legal.com
Attorneys for Debtor-in-Possession