# EXHIBIT 4

## FACTORING AGREEMENT

THIS FACTORING AGREEMENT (the "Agreement") made and entered into this 7th day of May, 2013 (the "Effective Date") and between **RTS FINANCIAL SERVICE, INC.**, ("Factor"), a Kansas Corporation; and **BULLOCKS EXPRESS TRANSPORTATION, INC.** ("Assignor"), a **CORPORATION** in the state of **DELAWARE**.

### RECITALS

1. Assignor desires to sell to Factor certain of its existing and future Accounts Receivable ("Accounts") arising from services performed in the regular course of Assignor's business; and

2. Factor desires to purchase certain of those Accounts; which Factor in its sole discretion deems acceptable for purchase, according to the terms and conditions provided in this Agreement.

3. Assignor is a debtor in Chapter 11 proceedings assigned Case No. _____ (the "Bankruptcy Case") pending the United States Bankruptcy Court for the District of Colorado (the "Court"). The Bankruptcy Case was commenced on May 7, 2013 (the "Petition Date"). Since the Petition Date, Assignor has been operating its business as a debtor-in-possession pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

4. This Agreement is, in all respects, subject to the approval of the Court, by order issued in the Bankruptcy Case.

5. This Agreement amends, supersedes and replaces the prior agreement of Factor and Assignor dated August 3, 2007, as amended, to the extent that this Agreements confers additional rights on Factor.

In consideration of the above recitals and mutual covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

### SECTION 1. DEFINITIONS

"Account" means any right to payment for services rendered or goods sold by or on behalf of Assignor. "Account Debtor" means a person or other entity, which is obligated to pay the Account.

### SECTION 2. PURCHASE OF ACCOUNTS

2.1 Assignor agrees to present to Factor for purchase, with recourse, Accounts arising from the activities and services performed by Assignor.

2.2 Factor, in its sole discretion, may purchase such Accounts from Assignor as Factor determines to be acceptable. Assignor hereby agrees to sell, assign, transfer, convey and deliver to Factor, such Accounts as Factor shall elect to purchase. Assignor will notify each

Account Debtor of the sale of its Account or Accounts to Factor and shall place a clear statement or legend, approved by Factor, on each such Account invoice, bill of lading, purchase order or statement, stating that such Account has been sold and assigned, and is payable to Factor at its office at 8601 Monrovia, Lenexa, Kansas 66215 or at such other address as Factor shall designate in writing. All remittances received by Assignor for payment of Accounts sold to Factor are the property of Factor, and Assignor shall hold such proceeds in trust for Factor, and shall immediately deliver to Factor, in the identical form, all payments received by Assignor on each such Account, together with all documents accompanying the remittance to Assignor. Assignor guarantees the timely payment of the monies and amounts represented by the assigned Accounts. Factor will not purchase Accounts representing services for which assignor did not in fact act as a transportation carrier.

### SECTION 3. PURCHASE PRICE AND FACTORING CHARGE; SECURITY RESERVES

3.1  The purchase price for each Account purchased by Factor hereunder shall be the net amount of such Account, less the Factor's fee, which fee shall be an amount equal to 2.35% of such net amount. "net amount" means the gross amount of the Account less any discount or allowance of any nature allowed to the Account Debtor.

3.2  Payment of the purchase price to Assignor shall be made as follows:

(a)  Upon the presentation by Assignor to Factor of an acceptable bill of lading, rate confirmation, and invoice (submitted in duplicate) for an Account approved for purchase by Factor, and provided no claim or dispute shall then exist with the Account Debtor as to the Account, Factor will advance to the Assignor the purchase price of the Account, less a security reserve equal to 7.65% of the net amount of the Account.

(b)  Upon Factor's receipt of full payment of the invoice for the Account from the Account Debtor, and provided Assignor shall not otherwise be in default in any respect under this Agreement, Factor will remit to the Assignor the 7.65% security reserve in complete and full payment of the purchase price. In all cases, Factor will also retain its 2.35% Factor's fee.

### SECTION 4. SECURITY INTEREST

Assignor hereby grants to Factor a security interest in the following property of Assignor to secure all of the debts, liabilities and obligations of Assignor to Factor under this Agreement, including all costs and expenses incurred by Factor in connection with the enforcement of its rights under this Agreement: (a) all Accounts, wherever located or situated, and whether now existing or arising in the future, and whether now owned or at any time in the future acquired by Assignor, together with all proceeds and monies due or becoming due on such Accounts; all guaranties, insurance and security for such Accounts; all of Assignor's rights and interests in the goods giving rise to such Accounts, and the rights associated with or related or pertaining to such goods, including without limitation the right of stoppage in transit and any and all related insurance, any items substituted therefor as replacements and all additions thereto; (b) all of Assignor's chattel paper, instruments, general intangibles, securities, contract rights and insurance associated with or related to the Accounts; (c) all equipment and inventory; and (d) all

proceeds of any of the foregoing Accounts, property, rights and interests (collectively, the "Collateral"). Factor may file financing statements and all amendments thereto describing as the collateral any or all of the foregoing collateral by any description Factor deems appropriate in any jurisdiction or office Factor deems appropriate to perfect its security interest in the Collateral.

In the event of Assignor's breach of any warranty made in this Agreement or the Assignor's failure to observe or perform any of the provisions or obligations of this Agreement, Assignor shall be in default, and Factor may enforce payment and exercise any and all of the rights and remedies provided by Article 9 of the Uniform Commercial Code. In addition, upon default by Assignor, Factor shall also have the right to take all actions necessary to collect the Accounts directly from the Account Debtors.

### SECTION 5. REPURCHASE OF ACCOUNTS

All Accounts purchased by Factor from Assignor are purchased with full recourse. If Assignor breaches any warranty or otherwise violates or defaults on any of its obligations hereunder, or if any Account purchased by Factor hereunder is not paid in full on or before the payment due date of such Account, then upon request by Factor, Assignor shall immediately repurchase such Account from Factor for an amount equal to the face amount of such Account (less any payments received by Factor on such Account from the Account Debtor), together with interest thereon at the rate of **ZERO%** per annum from the date of the assignment of such Account to Factor. Any security reserve held by Factor for such Account shall be released only in accordance with Section 3 (b), and Factor shall in all events also be entitled to and shall retain its Factor's fee on the Account. Typically, Factor will require repurchase of any unpaid Account no later than 110 days after the Account invoice date, unless Factor, in its sole discretion chooses otherwise. However, in all cases, any unpaid Account must be repurchased by Assignor within 140 days after the Account invoice date. Assignor shall not be relieved of its absolute repurchase obligation hereunder, even though the Account Debtor, whose Account Assignor must repurchase hereunder, was listed on Factor's debtor credit rating list.

### SECTION 6. REPRESENTATIONS AND WARRANTIES

Assignor represents, covenants, warrants and agrees as follows:

6.1 Assignor is a corporation duly organized, existing and in good standing under the laws of the state of **DELAWARE**; that the execution, delivery and performance of this Agreement are in every respect within its corporate powers and have been duly authorized by appropriate corporate action; and that this Agreement, when duly executed and delivered by the Assignor and the Factor, will constitute a legal, valid and binding agreement, subject only to approval by the Court, of the Assignor fully enforceable in accordance with its terms and conditions.

6.2 The Assignor's address set out in Section 14 of this Agreement is the address of Assignor's principal office and its sole place of business. Assignor shall give Factor immediate written notice of any change in the location of its principal office, the addition of any new place or places of business and their addresses, any name change or the addition of any name under

which Assignor does business, or any change in the nature or status of Assignor's business or operations.

6.3   As to each Account purchased by Factor under this Agreement: (1) the Account is not yet past due, arose in the ordinary course of Assignor's business and represents a bona fide completed transaction; (2) the title of Assignor to the Account is absolute and subject to no assignment, claim, lien or security interest; (3) the Account, as shown on Assignor's books and records and on any invoices, bills of lading or statements, delivered to Factor is a legally enforceable debt owed by Account Debtor to Assignor in its full face amount; (4) no partial payment has been made by anyone on such Account; (5) no set off, credit, allowance, adjustment, counterclaim or defense to such Account exists or will exist and no agreement has been made or will be made with any person or entity under which any deduction or discount may be claimed on such Account; (6) the Account is payable not more than thirty (30) days from the date of assignment of the Account to Factor.

6.4   Assignor shall execute any and all financing statements, Uniform Commercial Code forms or other documents or instruments which Factor deems reasonably necessary to protect its interest under this Agreement.

6.5   Assignor shall indemnify, defend and hold Factor harmless from and against any and all misrepresentations or breaches of warranty or other defaults hereunder by Assignor, and from any losses, expenses, attorneys fees or other costs incurred by Factor caused by or arising out of any such defaults or breaches of this Agreement by the Assignor and from any costs expenses or attorneys fees incurred by Factor in enforcing Factor's rights under this Agreement; from any dispute or claim resulting in liability, loss, expense, cost or attorneys fees caused by or arising out of the rejection of any work performed or services rendered by Assignor; or from any alleged claim, dispute, action, defense or set off of every kind and nature asserted by any Account Debtor.

6.6   The Assignor shall not, without the express written consent of the Factor, release, compromise, settle or adjust any Account purchased hereunder, or grant any discounts, allowances or credits thereon; provided, however, the Assignor may adjust the gross invoice amount of an unpaid Account by a reduction not to exceed $100.00 per Account, but in no event shall the total amount of such adjustments granted to any one Account Debtor at any one time exceed $1,000. Assignor shall immediately notify Factor of the any such adjustment, and upon the request of Factor, Assignor shall immediately repurchase the Account from the Factor for the gross amount of the Account as provided in section 5.

### SECTION 7. POWER OF ATTORNEY

7.1   In order to carry out this Agreement, and to avoid unnecessary notification of Account Debtors, Assignor irrevocably appoints Factor as Assignor's true and lawful attorney with the full power and right to: (a) invoice or bill for, collect, receive, and deposit to Assignor's bank accounts any and all amounts which may be due or become due to Assignor from Account Debtors, and to use Assignor's name for purposes of billing and collection of any and all amounts due; (b) receive, accept, open, dispose of and redirect any and all mail addressed to Assignor; (c) negotiate any checks received in payment of Accounts whether payable to

Assignor or Factor or both, and endorse the name of Assignor on any checks or other evidences of payment or other instruments or documents that may come into the possession of Factor on Accounts purchased by Factor and on any invoices or other documents or instruments relating to any of the Accounts or relating to any collateral or security hereby granted by Assignor to Factor; (d) in Assignor's name, or otherwise, demand, make claim for, sue for, collect, grant extensions, compromise, discharge, and get or give releases for any and all monies or funds due or to become due on Accounts; (e) execute and deliver receipts or acknowledgments to Account Debtors for such amounts due which shall be binding upon Assignor and Factor; (f) notify Account Debtors of the sale of Accounts to Factor and notify and instruct Account Debtors, in Assignor's name, of the address and procedures for making payments on any Accounts that are sold to Factor or which constitute collateral hereby granted by Assignor to Factor; (g) take all steps necessary to insure payment of such amounts and monies due, and do any and all things in Assignor's name necessary or proper to carry out the purposes intended by this Agreement; (h) file financing statements and all amendments thereto, describing as collateral any or all of the Collateral hereof by any description Factor deems appropriate in any jurisdiction or office Factor deems appropriate to perfect its security interest in the Collateral; and (i) initiate debit or credit entries through the Federal Reserve Automated Clearing House System (ACH) to any deposit account maintained by Assignor wherever located in order to satisfy any obligations of Assignor to Factor under this Agreement. It is understood that this power of attorney is coupled with an interest, and is irrevocable until all obligations of Assignor to Factor under this Agreement have been satisfied.

      7.2     Exercise of the foregoing powers shall be in the sole and absolute discretion of Factor, but Factor shall have no obligation to exercise any of the foregoing powers. Nothing contained in this Agreement shall in any way require Factor to initiate or become a party to any litigation or other legal proceedings.

      7.3     The Factor shall not, under any circumstances, or in any event whatsoever, have any liability for any error made in good faith, omission or delay of any kind occurring in the collection, payment or settlement of any Account or of any instrument received in full or in part payment thereof or in dealing with any lien, security or guaranty of any such Account

## SECTION 8. BOOKS, RECORDS AND FINANCIAL STATEMENTS

All of Assignor's books, accounts, ledgers, correspondence, records and papers pertaining to all of the Assignor's Accounts and business shall be accurately and properly prepared and maintained by Assignor and shall disclose the sale of Accounts purchased by Factor. All such books, ledgers, accounts, records, correspondence and papers shall be made available by Assignor at all reasonable times for Factor's inspection, audit and copying. Assignor shall, not less often than quarter annually, furnish Factor with financial statements, including income statements and balance sheets showing Assignor's financial condition. If requested by Factor, Assignor shall also provide Factor with its certified financial statements prepared by an independent accountant acceptable to Factor.

## SECTION 9. ATTORNEY'S FEES AND EXPENSES

If Factor retains the services of an attorney to enforce any obligation of Assignor to Factor under this Agreement, Factor shall be entitled to recover from Assignor all attorneys fees, court costs and expenses, regardless of whether or not an action is commenced.

## SECTION 10. GOVERNING LAW AND CONSENT TO JURISDICTION

10.1   This Agreement is accepted and made in the state of Kansas and this Agreement and the rights of the parties hereunder shall be interpreted under and governed as to construction, enforcement and validity by the laws of the state of Kansas.

10.2   Factor and Assignor agree that any legal suit, action or proceeding arising out of or related to this Agreement shall be instituted, heard and resolved solely and exclusively in the Court.

## SECTION 11. TERMINATION

11.1   This Agreement shall have an initial term of twelve (12) months from the Effective Date hereof (the "Original Term"), and shall automatically renew for successive periods of twelve (12) months ("Renewal Periods"), unless sooner terminated as hereinafter provided. Assignor may terminate this Agreement as of the expiration of the Original Term or any Renewal Term by giving Factor prior written notice of its intention to so terminate. Such notice shall be given by Assignor to Factor at least sixty (60) days, but not more than ninety (90) days, prior to the expiration of the Original Term or any Renewal Term. Factor may terminate this Agreement at any time upon thirty (30) days prior written notice to Assignor; provided however, that this Agreement shall terminate immediately, at the option of Factor, upon the insolvency of the Assignor or the filing of a petition in bankruptcy by or against the Assignor or upon any default or breach of this Agreement by Assignor.

11.2   All of the Assignor's covenants, warranties and agreements under this Agreement made to Factor, and all rights and remedies of the Factor under this Agreement, shall survive the termination of this Agreement and shall continue in full force and effect until all Accounts purchased hereunder are paid in full and all debts and obligations to of Assignor to Factor hereunder have been satisfied in full. Upon termination Assignor shall remain liable to Factor for any and all unpaid Accounts, and for all other amounts and monies as may be owed to Factor under the terms and conditions of this Agreement. Upon termination, any security reserve and any other funds or monies from any source whatsoever which would otherwise be owing to Assignor by Factor may be retained by Factor until such time as all obligations and debts of Assignor to Factor have been fully satisfied, and Factor's security interest provided in Section 4 hereof shall continue until all obligations of Assignor to Factor are paid in full. Factor shall have the right, in its sole discretion, to set off against the security reserve and any other sums owing to Assignor by Factor all obligations and debts of Assignor to Factor. The purchase price for each Account purchased by Factor hereunder shall be the net amount of such Account, less the Factor's fee, which fee shall be an amount equal to 2.35% of such net amount. "net amount" means the gross amount of the Account less any discount or allowance of any nature allowed to the Account Debtor.

## SECTION 12. MODIFICATION, SEVERABILITY, SUCCESSORS AND ASSIGNS, ETC.

This Agreement may be modified only by written instrument signed by the parties hereto. In the event that any one or more of the provisions contained in this Agreement should be held by any court of competent jurisdiction to be unenforceable, the holding or decision shall not affect or impair any of the other provisions of this Agreement. This Agreement supersedes all prior agreements between the parties, and shall bind the successors and assigns of Assignor and shall inure to the benefit of the successors and assigns of Factor. As used in this Agreement, the singular shall be deemed to include the plural and vice versa, and the neuter shall be deemed to include the masculine or feminine, and vice versa.

## SECTION 13. NO DELAY

13.1 No delay or omission on the part of Factor in enforcing or exercising any right hereunder shall operate as a waiver of such right or any other right. The waiver by Factor of the breach by Assignor of any provision of this Agreement, or of Assignor's compliance with such provisions, shall not be construed as a waiver of any other breach or of the provision itself. No waiver or modification of the Agreement shall be chargeable against Factor unless in writing, signed by Factor and delivered by Factor to Assignor.

13.2 The waiver, compromise, discharge, extension or release by Factor, of any duty or obligation of any Account Debtor shall not reduce, diminish, limit, or restrict in any way Assignor's obligations and liabilities to Factor.

## SECTION 14. NOTICE

Notices under this Agreement shall be in writing and mailed postage prepaid, registered or certified mail, return receipt requested, or sent by overnight delivery service, or by FAX transmission to the recipient's FAX machine, addressed to the addressees set forth below, or to such other address as either party notifies the other in writing. All such notices shall be effective upon receipt if delivered by hand or FAX or overnight delivery service; otherwise upon three (3) business days after the notice is placed in the U.S. Mail. Addresses for notices are as follows:

In the case of Assignor, to:

**BULLOCKS EXPRESS TRANSPORTATION, INC.**
**510 EAST 51ST AVENUE**
**DENVER, CO 80216**
**TEL: 303-296-0302**
**FAX: 303-296-0116**

In the case of Factor, to:

**RTS FINANCIAL SERVICE, INC.**
**8601 MONROVIA**
**LENEXA, KANSAS 66215**
**TEL: (800) 860-7926**
**FAX: (913) 492-1998**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their duly authorized officers, as of **May 7, 2013.**

ASSIGNOR:

ATTEST:            **BULLOCKS EXPRESS TRANSPORTATION, INC.**
                                            **MC#227618**

By: _____

Name:_____

Title: VICE-PRESIDENT             BRUCE A. BULLOCK
                                           Title: PRESIDENT

FACTOR:

ATTEST:            **RTS FINANCIAL SERVICE, INC.**

By: _____

MARTIN J RYAN          WILLIAM M. RYAN

Title: VICE-PRESIDENT            Title: PRESIDENT

May 7, 2013

**ATTN: Accounts Payable Manager**

Effective with the presentation of this letter be advised that **BULLOCKS EXPRESS TRANSPORTATION, INC.**, has retained the services of RTS Financial Service, INC. to improve our cash flow and in an effort to give us greater efficiency in our credit and collection departments.

Therefore, effective with presentation of **BULLOCKS EXPRESS TRANSPORTATION, INC.** freight bills, all invoices will be processed through RTS Financial Service, Inc., **thus assigning all payments to RTS Financial Service. INC. All payments must be mailed directly to:**

**RTS Financial Service, Inc.
P.O. Box 932001
Kansas City, Mo 64193-2001
(800) 860-7926**

Please promptly notify RTS Financial Service, INC. of any claims, returns, questions, or dispute, which may affect payment. If you pay anyone other than RTS Financial Service, INC. without prior written consent, you wil be required by law to pay the amount again to RTS Financial Service, Inc... We ask that you please **sign and return a copy of this letter to RTS Financial Service, INC. as your acknowledgment of the aforementioned "Notification of Assignment". RTS Financial Service, INC. will further require a copy of both your FMCSA Operating Authority and Broker's Surety Bond for the initial set-up of your company's credit profile. Kindly fax this information directly to RTS at (913) 492-1998 for your line of credit to be activated.**

Your compliance with this notification is greatly appreciated. If you have any questions regarding the program, please do not hesitate to contact RTS @ 800-860-7926. This assignment letter may only be revoked by a writing signed by **both RTS FINANCIAL SERVICE, INC. and BULLOCKS EXPRESS TRANSPORTATION, INC.**

Sincerely,

| | |
|---|---|
| Marc Andreoli, | BRUCE A. BULLOCK |
| Operations | BULLOCKS EXPRESS TRANSPORTATION, INC. |
| RTS FINANCIAL SERVICE, INC | 510 EAST 51ST AVENUE |
| | DENVER, CO 80216 |
| | TIN: 84-1132684 |
| | MC: 227618 |

## ACCOUNTS PAYABLE DEPARTMENT

By receipt of this letter, I acknowledge assigning the payment of receivables direct to R.T.S. Financial Service.

Company Name _____

Address _____ City/State/Zip _____

Acknowledged By: _____
                    SIGNATURE     TITLE          DATE

Please print name: _____

**FAX TO: 913 492-1998**

May 7, 2013

**ATTN: Accounts Payable Manager**

Effective with the presentation of this letter be advised that **BULLOCKS EXPRESS TRANSPORTATION, INC.** has retained the services of RTS Financial Service, INC. to improve our cash flow and in an effort to give us greater efficiency in our credit and collection departments.

Therefore, effective with presentation of **BULLOCKS EXPRESS TRANSPORTATION, INC.** freight bills, all invoices will be processed through RTS Financial Service, Inc., **thus assigning all payments to RTS Financial Service, INC. All payments must be mailed directly to:**

**RTS Financial Service, Inc.**
**P.O. Box 932001**
**Kansas City, Mo 64193-2001**
**(800) 860-7926**

Please promptly notify RTS Financial Service, INC. of any claims, returns, questions, or dispute which may affect payment. If you pay anyone other than RTS Financial Service, INC. without the prior written consent of RTS Financial Service, Inc., you will be required by law to pay the amount again to RTS Financial Service, INC. We ask that you please provide the following information with your payment remittance:

1. The carrier name - **"BULLOCKS EXPRESS TRANSPORTATION, INC."**
2. The invoice number(s)
3. Individual invoice amount

Your compliance with this notification is greatly appreciated. If you have any questions regarding the program, please do not hesitate to contact RTS @ 800-860-7926. This assignment letter may only be revoked by a writing signed by **both RTS FINANCIAL SERVICE, INC. and BULLOCKS EXPRESS TRANSPORTATION, INC.**

Sincerely,

Marc Andreoli, Operations
RTS FINANCIAL SERVICE, INC

BRUCE A. BULLOCK
BULLOCKS EXPRESS TRANSPORTATION, INC.
510 EAST 51ST AVENUE
DENVER, CO 80216
TIN: 84-1132684
MC: 227618

## GUARANTY

For valuable consideration and to induce **RTS FINANCIAL SERVICE, INC. ("RTS")** to enter into the Factoring Agreement dated **May 7, 2013** ("the Factoring Agreement") with **BULLOCKS EXPRESS TRANSPORTATION, INC. ("ASSIGNOR")**, I the undersigned, do hereby guarantee to **RTS**, its successors and assigns the full, prompt and complete performance by **ASSIGNOR** of all of the provisions, conditions, covenants and agreements contained in the Factoring Agreement, including the full and complete payment of all monies that become due thereunder to **RTS** by **ASSIGNOR** and do hereby waive all notice of default by **ASSIGNOR** and notice of acceptance of this guaranty by **RTS**, and do hereby consent to any extension of time that may be given by **RTS** to **ASSIGNOR** of time of payment or performance. This guaranty is not limited to any particular period of time, but shall continue until all of the terms, covenants, and conditions of the Factoring Agreement have been fully and completely performed by **ASSIGNOR** and the undersigned shall not be released of any obligation or liability hereunder so long as there is any claim of **RTS** against **ASSIGNOR** arising out of the Factoring Agreement that has not been settled or discharged in full. The undersigned waives any right to require **RTS** to proceed against **ASSIGNOR**, the account debtors or customers of **ASSIGNOR** or any other person, or to proceed against or exhaust any security or pursue any other remedy in **RTS'** power. Whether or not suit be initiated, the undersigned agrees to pay reasonable attorneys' fees and all other costs and expenses incurred by **RTS** in enforcing this guaranty and in any actions or proceedings arising out of or relating to the guaranty. This guaranty shall be governed and construed in accordance with the laws of the state of Kansas. The undersigned hereby consents to the sole and exclusive jurisdiction of any state or Federal court within the state of Kansas in connection with the enforcement of this guaranty.

---

BRUCE A. BULLOCK
1369 South Ridge Court
Golden, CO 80401

Subcribed and sworn to before me this ___ day of May, 2013.

---

Notary Public